UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DERON LOVE,

    Plaintiff,

    v.                                                         Case No. 21-CV-685-SCD

MILWAUKEE COUNTY,

    Defendant.

## DECISION AND ORDER
## GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Deron Love filed a federal complaint[1] against Milwaukee County, alleging that it violated his constitutional rights by intentionally depriving him of water while he was incarcerated at the Milwaukee County Jail. *See* Pl.'s Sec. Amend. Compl., ECF No. 36. Love contends that the County engaged in a custom or practice of water deprivation as a form of discipline at the Jail. *See id.* The clerk randomly assigned the matter to me, and all parties consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b). *See* ECF Nos. 3, 8. On December 29, 2023, the defendant filed a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. *See* ECF No. 47. Love filed a brief in opposition, ECF No. 56, and the defendant filed a reply brief, ECF No. 58.

### BACKGROUND

The County alleges that Love has not generated a genuine dispute of material fact and requests that I accept its proposed findings of fact as undisputed for purposes of summary

---

[1] References herein to Love's complaint shall mean the second amended complaint. *See* ECF No. 36.

judgment. ECF No. 58 at 2–6. Love did not propose any findings of fact of his own. In response to the County's proposed findings of facts, Love relies exclusively on his deposition testimony, which does not specifically address many of the defendant's proposed facts. Moreover, Love attempts to dispute many findings without providing appropriate citations to the record. *See Malec v. Sanford*, 191 F.R.D. 581, 583 (N.D. Ill. 2000) ("District courts are not obliged in our adversary system to scour the record looking for factual disputes. Factual allegations not properly supported by citation to the record are nullities.") (internal citation omitted)).

I will disregard Love's attempts to dispute the County's facts in those instances where he does not cite supporting evidence. *See, e.g.*, Pl.'s Resp. to Def.'s Pro. Material Facts, ECF No. 57 at ¶¶ 9–12, 29, 30, 34, 39, 41–48, 54, 74, 77, 81, 86, 89, 95, 103, 118, 119 (responding that Love does not dispute the defendant's proposed fact "as to the policy" or "as to theory" without citation to the record). I will address, as relevant, those instances in which Love does provide record citations, although many of those responses border on providing additional information "rather than merely showing the existence of a genuine dispute" as to the defendant's proposed findings. *See Pollock v. Manpowergroup US, Inc*, No. 18-CV-107, 2019 WL 6117619, at *3 (E.D. Wis. Nov. 18, 2019) ("Any additional proposed findings of fact must be presented only in accordance with Civ. L.R. 56(b)(2)(B)(ii), which ensures that the moving party is able to appropriately respond to the proposition.").

Despite the deficiencies in Love's response, the defendant's motion for summary judgment will only be granted if it can demonstrate that there is no genuine issue of material

fact and that it is entitled to judgment as a matter of law. *See Johnson v. Gudmundson*, 35 F.3d 1104, 1112 (7th Cir. 1994).

I.  *Timing of Allegations*

Love was booked into the Milwaukee County Jail as a pretrial criminal defendant on September 12, 2015. ECF No. 57 at ¶ 17. According to the complaint, employees or agents[2] of the County intentionally turned off Love's in-cell water from October 19, 2015, through October 27, 2015. *See* ECF No. 36 at ¶ 13. Love's claim is arguably limited to those dates, but during his deposition, Love also alleged that Jail staff turned off his water for six days upon assignment to a disciplinary housing unit on November 6, 2015. ECF No. 57 at ¶ 70. For its part, the County offers facts about the water access generally afforded to inmates in Pods 6C and 4D (the general population and disciplinary housing units, respectively, where Love resided in October and November 2015). *See id.* at ¶¶ 22, 23. Love responds that he does not dispute the County's contentions in theory but maintains that his experience reflects a different story. *See id.* at ¶¶ 9–11, 29–30, 33–49, 51, 54–58, 62–63; 66–70, 75.

II. *General Population*

According to the County, "Pod 6C occupants could access drinking water from the dayroom sink/faucet, the recreation gyms located on both floors of the Jail containing general population housing units, and from their in-cell sinks." *Id.* at ¶ 51 (citing deposition of Corrections Captain William Duckert, ECF No. 50). Love claims that he did not have access to in-cell drinking water in Pod 6C because a guard shut his water off in retaliation for Love laughing at him. *Id.* According to the County, Pod 6B and 6C occupants could use the gym (and the water fountain inside) every day on an alternating basis (switching which pod had

---

[2] Love names no individual defendants in the complaint. *See* ECF No. 36.

3

access during first and second shift). *Id.* at ¶ 33. Love does not dispute this fact "in theory" but claims "there were time periods when there was limited prisoner movement while Plaintiff was housed at the Jail." *Id.* Reviewing the cited deposition testimony, Love generically indicated that Pod 6C was not open every day due to staffing shortages and inmate fighting. *See* Love Depo., ECF No. 51-2 at 41:14–17. He stated they would be let out "every two days if not every day or every other day."[3] *Id.* However, Love never suggests that these instances occurred while his in-cell water was turned off. Love also cited this deposition testimony about limited movement as evidence to dispute his access to other 6C services, such as the dayroom sink and showers. *See* ECF No 57 at ¶ 52. But because he never connects the allegation to the claimed period of water deprivation, Love has not generated a genuine dispute related to the limited movement.

Love also contends that he could not access the dayroom sink because the guard who shut his water off simultaneously broke Love's cell door, which prevented Love from leaving his Pod 6C cell for four days.[4] *Id.* at ¶¶ 35, 51, 60. However, Love does not dispute the County's observation that Love "was outside of his cell on Pod 6C during the relevant time period and utilized the Pod 6C telephones on at least October 20, 2015, October 22, 2015, October 23, 2015, October 24, 2015, October 25, 2015, and October 26, 2015." *Id.* at ¶ 60. Based on this telephone concession, I cannot accept Love's contention that he was unable to leave his Pod 6C cell for four straight days—at least during the October 19 to 27 window. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is

---
[3] Love elsewhere responds, without citation, "Plaintiff has indicated to counsel that inmates were granted access to the gym no more than one to two times per week." ECF No. 57 at ¶ 51. I will disregard this assertion because it is not properly supported.
[4] Love further claims that the dayroom sink was located "behind a red line which inmates were not allowed to cross." *Id.* at ¶ 51. I will disregard this contention because Love offers no record evidence in support thereof.

4

blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

According to the County, Pod 6C occupants "could request water from the Pod officer by using the intercom system in their cells" each night after the dayroom closed at 9:00 P.M. ECF No. 57 at ¶ 63. Love does not dispute this fact in theory but contends that he "repeatedly requested water from Jail staff which was denied." *Id.* Love cites deposition testimony in which he claims to have asked staff to turn his water back on but never indicates that he requested water over the intercom. *See id.* (citing ECF No. 51-2 at 16:5–10, 24:12–15). Therefore, Love has not generated a genuine dispute as to his ability to request water from his Pod 6C cell. Similarly, Love provides no supporting evidence to dispute the County's evidence that the dayroom was open daily after breakfast at approximately 7:00 A.M. until 9:00 P.M. *See id.* at ¶ 30.

III. *Disciplinary Housing*

Love moved to a disciplinary housing unit on Pod 4D on November 6, 2015. *Id.* at ¶ 64. According to the County, "[t]he primary source of drinking water for occupants on Pod 4D, aside from the water provided during meals, is their in-cell sink. Should an occupant's Pod 4D in-cell sink be determined inoperative the occupant [would be] re-assigned to a cell with an operating sink in accordance with their classification status." *Id.* at ¶ 70. Love does not dispute this policy exists but claims that his "cell had no water for six days and he was not re-assigned as the water was deliberately withheld." *Id.* (citing Love Depo., ECF No. 51-2 at 50:14–19). Love does not dispute the County's citation to telephone logs that demonstrate Love was outside his cell and used the Pod 4D telephone during this time. *Id.* at ¶ 102–03 (citing ECF

5

No. 50-6) (log reflecting that Love used the telephone on November 6, 7, 9, 12, and 14, of 2015).

The County submits that "[a]t any time, day or night, Pod 4D occupants could request drinking water in cups provided by the corrections officers monitoring the Pod 4D subpods, and they are permitted to keep paper cups in their cells in order to obtain drinking water from the sink in their respective cells." *Id.* at ¶ 75. Love does not dispute this practice in theory but maintains that he "repeatedly asked for water access which was denied for six days." *Id.* To support his dispute, Love cites various portions of his deposition testimony, which reflect Love's contention that he asked staff to restore his in-cell water but never indicate that Love asked for (nor that staff refused to bring) cups of drinking water. *See* ECF No. 51-2 at 16:5–15, 24:12–15, 25:8–14, 29:21–30:2, 45:20–25. The County also asserts that "[i]f in-cell water is turned off, for any reason, corrections staff at the Jail ensure that the Jail's policy of 24 hour a day occupant access to water and toilets is adhered to by conducting extra rounds to the housing unit cells and encouraging the occupants to use their in-cell intercoms to let them know when they either need to use the restroom or when they need water to drink." ECF No. 57 at ¶ 97. In response, Love claims that he repeatedly contacted various Jail officials regarding his water being turned off. *See id.* But this response does not contradict the County's statement about extra rounds and intercom requests, and therefore, does not create a genuine dispute on that point.

Finally, the County declares that there is no evidence Love's in-cell water on Pod 4D was turned off in November 2015. *Id.* at ¶¶ 99, 100. The County cites Jail logs reflecting regular inspections and other officer observations on Pod 4D from midnight on November 7, 2015, through midnight on November 14, 2015. *See* ECF No. 51-5. No entries suggest that

Love's in-cell water had been turned off, but several entries concern Love's special diet due to allergies and Love refusing medication. *See id.* Love purports to dispute the County's proposed fact, without providing citation to the record, by claiming that he submitted written grievances evidencing that his water was turned off at the jail. *See id.* Although not properly cited, Love provided copies of three inmate grievance forms with his federal complaint. *See* ECF No. 36-2. The first form lists an incident date of "October." *See id.* The other two forms are mostly illegible but identify incident dates in December and do not appear to involve water. *See id.* Given the timing, these forms do not support Love's contention that his disciplinary housing unit lacked in-cell water in November 2015.

IV.   *General Conditions*

The County asserts that Love received a drink with every meal at the Jail (either water, milk, or powdered/flavored drink). ECF No. 57 at ¶¶ 47–48. Love responds, without citation, that his meals did not always include a drink "except in powdered form." *See id.* This response does not conflict with the County's contention that meal beverages sometimes came in powdered form, which required that drinking water be added. At the same time, Love concedes that he "does not allege that he was denied food, beverages with his meals, or other sustenance during the relevant time period." *Id.* at ¶ 15. As for other available beverages, Love does not dispute that commissary items arrived within approximately three days of purchase, Love consistently had funds available for commissary purchases, and that he ordered commissary items on October 19, October 21, and October 26, 2015. *Id.* at ¶¶ 50, 59.

Furthermore, Love concedes that his medical records do not reflect any symptoms related to dehydration in October or November 2015. *Id.* at ¶ 87. The County pointed out that Love does not allege in his amended complaint "that the conditions of his confinement

7

included prolonged exposure to inhumane conditions such as feces on his cell walls, in his toilet, or on the floor, or that he was unable to use a toilet or clean his cell during the relevant time period." *Id.* at ¶ 14. And Love does not dispute this fact. *See id.*

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts" are those that, under the applicable substantive law, "might affect the outcome of the suit." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A moving party "is 'entitled to a judgment as a matter of law'" when "the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Still,

> a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* (internal quotation marks omitted).

To determine whether a genuine issue of material fact exists, I must review the record, construing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *See Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003) (citing *Anderson*, 477 U.S. at 255). "However, [my] favor toward the nonmoving party does not extend to drawing inferences that are supported by only speculation or conjecture." *Fitzgerald v. Santoro*, 707 F.3d 725, 730 (7th Cir. 2013) (quoting *Harper v. C.R. Eng., Inc.*, 687

8

F.3d 297, 306 (7th Cir. 2012)). That is, "to survive summary judgment, the non-moving party must establish some genuine issue for trial 'such that a reasonable jury could return a verdict' in [his] favor." *Id.* (quoting *Makowski v. SmithAmundsen LLC*, 662 F.3d 818, 822 (7th Cir. 2011)).

## DISCUSSION

The amended complaint alleges a due process claim against Milwaukee County pursuant to *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). However, before getting to the *Monell* analysis, I must first determine whether the defendant actually deprived Love of any federal rights. *See Midwest Bank ex rel. Est. of LaPorta v. City of Chi.*, 988 F.3d 978, 987 (7th Cir. 2021) ("[T]he plaintiff must initially prove that he was deprived of a federal right. That's the first step in every § 1983 claim, including a claim against a municipality under *Monell*."). As a pretrial detainee, Love's federal rights derived from the Due Process Clause of the Fourteenth Amendment. *See Smith v. Dart*, 803 F.3d 304, 309 (7th Cir. 2015).

> [T]o prevail on a claim alleging unconstitutional conditions of pretrial confinement, the plaintiff must prove three elements: (1) the conditions in question are or were objectively serious (or if the claim is for inadequate medical care, his medical condition is or was objectively serious); (2) the defendant acted purposefully, knowingly, or recklessly with respect to the consequences of his actions; and (3) the defendant's actions were objectively unreasonable—that is, "not rationally related to a legitimate governmental objective or . . . excessive in relation to that purpose."

*Hardeman v. Curran*, 933 F.3d 816, 827 (7th Cir. 2019) (Sykes, J., concurring) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015)).

Love alleges that employees or agents of the defendant intentionally turned off his in-cell water on or about October 19, 2015, continuing through on or about October 27, 2015. ECF No. 36 ¶ 13. Complete water deprivation for several days easily qualifies as a

9

constitutional deprivation. *See Atkins v. City of Chicago*, 631 F.3d 823, 830 (7th Cir. 2011). But the defendant contends that even if Love lacked in-cell water during this time, he still had uninhibited access to drinking water in multiple locations in his housing unit, as well as a working toilet. ECF No. 48 at 5. Therefore, the County maintains that the condition amounted at most to an inconvenience, rather than a constitutional deprivation. *See id.* at 7.

Ample caselaw establishes that temporary in-cell water shut-offs do not rise to the level of a constitutional deprivation when the individual has other access to drinking water. *See, e.g.*, *Williams v. Collins*, No. 14 C 5275, 2015 WL 4572311, at *3 (N.D. Ill. July 29, 2015) ("[A] lack of running water in an inmate's cell is not a constitutional violation where the inmate has access to drinking water in other prison areas."); *see also Jelinek v. Roth*, 33 F.3d 56 (7th Cir. 1994) ("Nothing in the Constitution requires that each prisoner be provided with clean, cold, warm, or any other form of running water in his cell although in recent history some improvements have been made."). As detailed above, Love fails to generate a genuine factual dispute relative to his daily access to the dayroom sink and gymnasium water fountain from October 19 to 27, or to his ability to request water from his cell on Pod 6C during the overnight hours. *See* ECF No. 57 at ¶¶ 51, 63. On this record, Love had sufficient access to water during the relevant time. *See Jackson v. Duran*, No. 15 CV 1846, 2017 WL 8217063, at *5 (N.D. Ill. Dec. 14, 2017) (no constitutional deprivation where plaintiff spent twelve days in a cell without a working sink but "received beverages with meals one to three times a day" and "could drink all the water he wanted during the five to six hours a day he spent in the facility's dayroom"); *Muhammad v. Wilson*, No. 05 C 743, 2006 WL 2413710, at *2 (N.D. Ill. Aug. 16, 2006) (seven days without running water amounted to an inconvenience, rather than a

10

Case 2:21-cv-00685-SCD    Filed 06/18/24    Page 10 of 13    Document 59

constitutional deprivation, where inmate received a beverage with each of three daily meals). Therefore, Love's constitutional claim for water deprivation fails as a matter of law.

Even if Love successfully raised a claim for water deprivation during his Pod 4D occupancy in November 2015, he still has not generated a genuine dispute of material fact. On this record, Love *at least* had the ability to request cups of drinking water from Pod 4D staff "at any time, day or night" during the six days that he alleges his in-cell water was shut off. ECF No. 57 at ¶ 75. The Seventh Circuit has held that instances of inmates receiving only mealtime beverages, for a short duration, did not rise to the level of severity necessary to state a constitutional violation. *See Tesch v. County of Green Lake*, 157 F. 3d 465 (7th Cir. 1998); *see also Muhammad*, 2006 WL 2413710, at *2 (district court more recently finding the same). Mealtime frequency is theoretically less than an occupant possessing the ability to request drinking water at any time. In practice, the frequency would depend on Love making the request. Love never indicates that he asked for drinking water, much less that staff denied such requests. Therefore, Love could not sustain a claim for unconstitutional conditions of confinement based on water deprivation in early November 2015.

Even assuming Love established that he had been deprived a federal right (which he has not), his *Monell* claim against the County fails because Love has not demonstrated that the County had notice of water deprivation as a custom at the Jail. *See* ECF No. 56 at 3. This avenue to establishing *Monell* liability requires a plaintiff to produce evidence of "a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." *Phelan v. Cook Cnty.*, 463 F.3d 773, 789 (7th Cir. 2006), overruled on other grounds by *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016)). The Seventh Circuit has emphasized

11

"that the word 'widespread' must be taken seriously." *Id.* "The plaintiff must introduce evidence demonstrating that the unlawful practice was so pervasive that acquiescence on the part of policymakers was apparent and amounted to a policy decision." *Id.*

In support of his widespread practice claim, Love cites a 2001 Consent Decree regarding medical treatment at the Jail, the dehydration death of Terrill Thomas at the Jail in April 2016, and several news articles about jail conditions from 2014, 2021, 2023, and 2024. *See* ECF Nos. 36, 56 at 4. However, the Consent Decree constitutes a settlement agreement that is inadmissible to establish evidence of a constitutional violation in this matter. *See* ECF No. 57 at ¶ 114; *Wesley by Wesley v. Armor Corr. Health Servs. Inc.*, No. 19-cv-0918-bhl, 2022 WL 16748861 (E.D. Wis. Nov. 7, 2022). In any event, Love fails to explain how the Consent Decree put the County on notice of the conduct alleged in his complaint. *See* ECF No. 56. Similarly, Love cannot establish a widespread practice of constitutional violations via the news articles because they are inadmissible hearsay evidence when offered to prove the truth of their contents. *See Wynn v. City of Indianapolis*, No. 1:20-cv-1638-JMS-MJD, 2022 WL 1120490, *16 (S.D. Ind. Apr. 14, 2022) ("News articles are hearsay when offered to prove the truth of their contents") (citing *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997)).

As for the death of Terrill Thomas, Love has not explained how that single incident reflects such a pervasive practice as to constitute acquiescence by the County. *See* ECF No. 56. Love claims that the County's inquest into Thomas' death revealed a widespread practice of turning off in-cell water as punishment. ECF No. 36 at ¶ 12. However, the County provided the jury's verdict related to each question posed during the inquest, which does not include such a finding, and Love offers no record evidence to properly dispute this fact. *See* ECF No. 57 at ¶ 123 (citing Wisconsin CCAP Record, ECF No. 51-7). For these reasons, Love has

not established the County had notice of a widespread custom of water deprivation as punishment.

Ultimately, even if Love's cell water had been turned off, he has not provided any evidence that the county deprived him of meaningful access to drinking water in other ways. Moreover, Love cannot show that the county had a widespread practice relating to the denial of drinking water. Accordingly, the defendant's motion will be granted.

## CONCLUSION

For all the foregoing reasons, the court **GRANTS** the defendant's motion for summary judgment, ECF No. 47. The action is dismissed with prejudice. The clerk of court shall enter judgment accordingly.

**SO ORDERED** this 18th day of June, 2024.

_____
STEPHEN C. DRIES
United States Magistrate Judge